UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL MANOLO MORALES ALAY,<br>Petitioner,<br>v.<br>WARDEN OF THE GOLDEN STATE ANNEX, *et al.*,<br>Respondents. | Case No. 1:26-cv-3991 (VC)<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br>Re: Dkt. Nos. 1, 12 |

This habeas action concerns the detention of Petitioner Angel Manolo Morales Alay, a noncitizen who has lived in the United States since his release from immigration detention in March 2024. Based on the Government's application of 8 U.S.C. § 1225(b)(1), Petitioner was re-detained without any finding of changed circumstances demonstrating that he was a flight risk or danger to the community. This matter is before the Court on Petitioner's writ of habeas corpus and motion for temporary restraining order. *See* Dkt. Nos. 1, 12. For the reasons explained below, the Court GRANTS Petitioner's writ of habeas corpus, and resolves the motion for temporary restraining order as moot.[1]

## I. BACKGROUND

Petitioner is a citizen of Guatemala who entered the United States near the Laredo, Texas Border on or around March 9, 2024. Dkt. No. 10 at 11–12. Petitioner was subsequently arrested

[1] Petitioner filed the instant petition, and briefing completed on said petition, prior to the motion for a temporary restraining order being filed. The motion does not present any additional argument beyond what is already included in the petition and related briefing.

by a border patrol agent and transported to the Laredo Center Enhanced Processing Center for further processing by immigration authorities. *Id*. at 12. At the Center, Petitioner was placed in expedited removal proceedings and interviewed by an asylum officer for a credible fear determination. *Id*. at 12–13. The officer gave Petitioner a positive "credible fear determination due to [Petitioner's] torture claim." *Id*. at 13. Following this determination, Petitioner was served with a notice to appear, which placed him in removal proceedings under INA § 240 and set his next immigration hearing for the following year on May 15, 2025. *Id*. at 19. Petitioner was then released from immigration custody. *Id*. at 13. Following his release, Petitioner has applied for asylum and received work authorization from USCIS. Dkt. No.1 ¶ 23. Further, based on the records submitted by Respondents, it appears Petitioner has kept a clean criminal record. *See* Dkt. No. 10 at 16 (noting that Petitioner has "[n]o criminal history" at the time of his recent re-detention).

Despite no apparent change in circumstances since Petitioner's initial release, he was re-detained on April 30, 2026 while attending an immigration appointment at the Dallas Field Office. *Id*. at 15; Dkt. No. 1 ¶ 23.

## II. DISCUSSION

Proceeding pro se, Petitioner filed this habeas petition arguing that his prolonged detention without a finding that he is a flight risk or danger to the community violates due process. *See* Dkt. No. 1 ¶¶ 46–49. Respondents contend that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii) because he "was never admitted into the United States and thus is an 'applicant for admission' under § 1225(a)(1)." Dkt. No. 10 at 3.

Where a noncitizen is determined to be an application for admission pursuant to § 1225(a)(1), and has received a credible fear determination by an immigration officer, § 1225(b)(1)(B)(ii) provides that the noncitizen shall be detained for further consideration of his asylum application. 8 U.S.C. § 1225(b)(1)(B)(ii). Respondents contend that § 1225(a)(1) allows the Government to treat Petitioner—who was released by immigration authorities in March 2024 and allowed to live in the United States at liberty for over two years—as "an alien present in the

United States who has not been admitted" per § 1225(a)(1). Dkt. No. 10 at 3–4. They maintain that since Petitioner has not been admitted, is present in the United States, and has received a credible fear determination, he may now be detained under § 1225(b)(1)(B)(ii). *Id*.

The issue here, however, is that records submitted by Respondents indicate that following Petitioner's positive credible fear determination, he was *released*. *See* Dkt. No. 10 at 13. Though neither party indicates the statutory basis upon which Petitioner was released, the Supreme Court explained in *Jennings* that, under § 1225(b),

> [A]pplicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.' Such parole, however, 'shall not be regarded as an admission of the alien.' Instead, when the purpose of the parole has been served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'

*Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (internal citations omitted).

Courts throughout this circuit have found that where a noncitizen is released pursuant to § 1225(b), and the Government seeks to revoke that parole and re-detain the individual, process is due prior to that re-detention. *See, e.g.*, *Ramazan M. v. Andrews*, No. 1:25-CV-01356-KES-SKO (HC), 2025 WL 3145562, at *5 (E.D. Cal. Nov. 10, 2025); *R.A.N.O. v. Wofford*, 820 F. Supp. 3d 1094, 1103 (E.D. Cal. 2026); *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025); *Castillo v. Wofford*, No. 1:25-CV-01586-JLT-HBK, 2025 WL 3466064, at *8–9 (E.D. Cal. Dec. 2, 2025). Given that Petitioner was released into the interior of the United States, he has a protected liberty interest in his continued freedom. *See Enriquez Escarcega v. Warden of the Golden State Annex Facility*, No. 1:26-CV-01012-DAD-SCR, 2026 WL 480500, at *2 (E.D. Cal. Feb. 20, 2026) (noting that the court "need not determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in his continued release regardless of the applicable detention scheme"); *Cajina v. Wofford*, No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025) (same). "[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual

from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-CV-06695 AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey*, 408 U.S. at 482).

Many courts have applied the test established by the Supreme Court in *Mathews v. Eldridge* in considering what process is due in the immigration context where a noncitizen possesses a protected liberty interest in his continued release. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[2] There are three factors relevant to the due process inquiry under the *Mathews* framework: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings for nearly three years. Respondents do not meaningfully engage with the fact that Petitioner was released, and instead maintain that individuals do not possess a "freedom from all detention." Dkt. No 10 at 5. The distinction here, however, is that Petitioner was previously detained and then released by the Government. *See* Dkt. No. 10 at 13. In the intervening years he has been afforded the freedom to develop ties in his community, has applied for asylum, and has been authorized to work in the United States by USCIS. *See id*. at 15. "[His] detention denies [him] that freedom." *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1111 (E.D. Cal. 2025).

Turning to the second factor, "the risk of an erroneous deprivation [of liberty] is high"

[2] Respondents contend that the Supreme Court has never expressly endorsed the *Mathews* framework in the immigration context. Dkt. No. 10 at 6. The Court need not address whether this representation is accurate, as the Ninth Circuit has applied this framework with respect to an as-applied constitutional challenge to immigration detention. *Rodriguez Diaz v. Garland,* 53 F.4th 1189, 1206–07 (9th Cir. 2022). The Court, therefore, does the same here.

when, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Padilla v. U.S. Immigr. & Customs Env't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). The record before the Court indicates that Petitioner was released from immigration custody in March 2024, and then had the released revoked in April 2026 without any independent finding of changed circumstances by a neutral arbiter before his re-detention. As there have been no procedural safeguards to determine if Petitioner's re-detention is justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

The final *Mathews* factor also weighs in Petitioner's favor. Although the Government has a strong interest in enforcing the immigration laws, its' interest in detaining Petitioner without a hearing is "low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95 (E.D. Cal. 2025). This is particularly true where, as here, Respondents have made no showing that Petitioner is a flight risk or danger to the community. Indeed, the record indicates that Petitioner has no criminal history and was arrested while attending a scheduled immigration appointment. *See* Dkt. No. 1 ¶ 23; Dkt. No. 10 at 15. In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 787 F. Supp. 3d at 1094. "If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so," but it must provide Petitioner with a hearing first. *Ortega*, 415 F. Supp. 3d at 970.

In light of the fact that Respondents failed to make any showing of changed circumstances before re-detaining Petitioner, he is entitled to release.

## III. CONCLUSION AND ORDER

For the reasons stated above, the Petition is GRANTED. IT IS HEREBY ORDERED that:

1. Respondents immediately release Petitioner Angel Manolo Morales Alay from their custody.

2. Respondents shall not impose any additional restrictions on Petitioner, unless they are determined to be necessary at a future pre-deprivation and/or custody hearing.

3. If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter where the Government must show by clear and convincing evidence that Petitioner is a flight risk or danger to the community. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.

4. The Clerk of the Court is directed to close this case and enter judgment for Petitioner.

**IT IS SO ORDERED.**

Dated: July 14, 2026

VINCE CHHABRIA
United States District Judge